HOUSTON OXYGEN CO., Inc., et al. v. DAVIS et al.

No. 3717.

Court of Civil Appeals of Texas. Beaumont.

Oct. 5, 1940.

Rehearing Denied Dec. 4, 1940.

302

C. C. Kirkpatrick, of Houston, L. B. Hightower, III, of Livingston, Vinson, Elkins, Weems & Francis, of Houston, and V. A. Collins, of Livingston, for appellants.

Campbell & Foreman, of Livingston, for appellees.

WALKER, Chief Justice.

On August 25, 1939, in a collision on Highway No. 35, in Polk County, between a Chevrolet car driven by Sidney Lewis, in which Charles Applebhy, a minor, was riding as a passenger, and a truck owned and operated by Houston Oxygen Company, Inc., driven by Oliver R. Stanbury, appellants, Charles Applebhy received serious personal injuries, resulting in the loss of his arm and other injuries. On October 25, 1939, Pearl Davis, Charles Applebhy's mother, as his next friend and for herself, joined by her husband, Johnnie Davis, (negroes) filed this suit in district court of Polk county against the two appellants for damages for the injuries suffered by Charles; for Charles she prayed for damages in the sum of $50,000, and for herself in the sum of $17,000. On trial to a jury, the damages were assessed in favor of Charles in the sum of $16,000 and in favor of his mother in the sum of $4,000. Answering special issues, the jury convicted appellants of negligence in the respects charged in the petition, acquitting appellees, Charles Applebhy and his mother, of contributory negligence, and found against appellants on the issues of sole proximate cause and unavoidable accident. On the verdict, judgment was rendered in favor of appellees and their attorneys against appellants for the damages assessed by the jury, from which appellants have regularly prosecuted their appeal to this court.

At the time he was injured, Charles was about 15 years old. When he was a little child his father and mother were divorced, and at the time of the trial his mother, appellee Pearl Davis, had been married to

Johnnie Davis about 12 years. The father lived in Abeline, Texas; he was not made a party to this suit.

Appellants' first two propositions are: (a) The father "is the legal owner of the services of his minor child and the proper party to bring suit for such loss of services and, therefore, the mother has not shown any damage to herself for such loss of services;" (b) The father "is an indispensable party to said suit, being the legal owner of such services as compensation for his primary and continuing obligation to support the child." As an abstract legal proposition, it is correct to say that "Until the minor has been emancipated, his earnings belong to his father." Weimhold v. Hyde, Tex.Civ.App., 294 S.W. 899, 900. And on this proposition the general rule of law is that the father is a necessary party to an action to recover damages for the loss of the earnings of a minor son. But the principle of law invoked by appellants does not, on the facts of this case, support their propositions. The testimony on this point was as follows (Q. and A. reduced to narrative):

Lucinda Martin testified: "I am a first cousin of Pearl Davis. Charles Applebhy lives in Houston with his mother, and has lived with her all his life, and his mother has kept him in school—he is in school now. Before he was injured, Charles earned money by caddying and shining shoes; around the house he ironed, carried in wood and washed dishes; he seemed to think a lot of his mother and helped her around the house."

Charles Applebhy testified: "Pearl Davis is my mother, I am 15 years old; was 15 years old on the 28th of last August and will be 16 on August 28, 1940. I have lived with my mother all my life, and I was living with her at the time I was injured. I have worked since I was 12 or 14 years old; shining shoes and caddying. I earned four or five dollars a day shining shoes and two or three dollars a day caddying. I also made some money selling papers. The money I earned I gave to my mother and she used it to buy food and clothing and the necessities of life for the others around the house. I think a lot of my mother. If I had not been hurt it was my intention to help her the rest of my life. After this year I was going to quit school and get a job, and the money I would have earned I planned to give to my mother. My mothers owes a hospital bill here in Livingston as a result of my injuries. My mother has been married to my stepfather since I was a little boy. My father lives in Abeline; my mother was once married to my father and they are divorced. I have not seen my father in a pretty good while; he did not come to see me when I was hurt."

Pearl Davis testified: "Johnnie Davis is my husband. I have been married to him about 12 years; I have been living in Houston about 13 years but I do all the work I can. I have kept Charles in school ever since he was old enough to go to school. I wanted to give him an education. I am married to a good man and a good worker. Charles told me that he was going to stop school this year, if it had not been for his accident and go to work and help me. Since this accident he is going to continue in school. I have always bought Charles' clothes and kept him in school. Charles has no legal guardian of his estate. He has always lived with me and I have attended to him the best I could."

The evidence was further to the effect that Charles' father had made no contribution to his support since the divorce.

On the undisputed testimony, the father abandoned his minor son, surrendering his care and custody to the mother. He made no contributions to his support; since the divorce he made no effort to keep in touch with the child; he did not visit him and made no inquiries as to his condition when he was injured. The mother had the custody of the minor and the burden of his support and maintenance from the time he was born up to the time he was injured. For about three years she had received from Charles his earnings and appropriated them to the family needs without objection by the father. On the undisputed facts, the mother was entitled to Charles' services and earnings, and therefore had the right to sue for and appropriate as her separate property the damages suffered by her, proximately resulting from the injuries received by Charles in the collision in issue. This point is controlled by the following propositions from Trinity County Lumber Co. v. Conner, Tex.Civ.App., 187 S.W. 1022, 1024: "Although the general principle is clear and unquestioned that the father is entitled to the services of his minor child, and to all that such child earns by his labor, yet it seems to be equally clear that, as the right of the father to the services of the child is founded upon

his duty to support and maintain his child, if he should fail, neglect, or refuse to observe and perform this duty, his right to the services of his child should cease to exist; and such is held to be the law. As the father may forfeit his right to the custody and control of his child's person by abusing his power, so, by neglecting to fulfill the obligations of a father, he may forfeit his right to the fruit of his child's labor. If he provides no home for his protection, if he neither feeds nor clothes him, nor ministers to his wants in sickness or health, it would be a most harsh and unnatural law which authorized the father to appropriate to himself all the child's earnings."

The following definition of "unavoidable accident" was submitted by the charge: "By 'Unavoidable Accident,' as used herein, is meant the unexpected happening of an event which is not proximately caused by the negligent conduct of any party involved therein, and for which no one connected therewith is to blame."

We overrule the exception to the phrase "is to blame," that it is "an uncertain and indefinite phrase, and is calculated to mislead and confuse the jury in its deliberations."

The second point against the definition is that it "did not tell the jury in connection with unavoidable accident that it is an event happening without the negligence of either plaintiffs or defendants." The phrase "of any party interested therein" included the plaintiffs and defendants— the exception is not made that this phrase included anyone not a plaintiff and defendant.

Appellants made Sidney Lewis, the driver of the car in which Charles was riding, a party defendant. The third point against the definition of "unavoidable accident" is that it placed "a greater burden on the defendants than the law allows by putting the negative on them to show that cross-defendant, Sidney Lewis, was not free of negligence proximately causing the collision and will permit the jury to find that the collision was not the result of an unavoidable accident, if the jury thought the plaintiffs and these defendants were both free of any negligence causing the collision, and at the same time thought that Sidney Lewis was guilty of negligence proximately causing the collision." This point is overruled. As a party to the suit

Sidney Lewis was included in the term "of any party interested therein."

The fourth point against the definition is: "If the plaintiffs and these defendants were not guilty of any negligence proximately causing the collision, it would be and constitute an unavoidable accident in so far as plaintiffs and defendants were concerned, and it would constitute a perfect defense on the part of defendants to plaintiffs' cause of action even though the jury should feel that Sidney Lewis was guilty of negligence proximately causing the collision." This point is overruled. Negligence on the part of Sidney Lewis, who was made a party defendant by appellants, would not have made, as between appellants and appellees, the collision an unavoidable accident; on such showing Sidney Lewis would have been a joint tort-feasor.

Some ten or fifteen minutes before the collision, and at a point four or five miles from the place of the collision, the car in which Charles was riding passed a car in which Jack Sanders, E. C. Cooper and Mrs. Sally Cooper were riding. Jack Sanders testified that the car in which Charles was riding, at the time it passed their car, was being driven at 60 or 65 miles per hour. The court excluded his proffered testimony that Mrs. Cooper said, after the car in which Charles was riding had passed their car, "She said they must have been drunk, that we would find them somewhere on the road wrecked if they kept that rate of speed up." This statement by Mrs. Cooper was hearsay. She testified in the case on the very point involved in the excluded testimony. The statement by Jack Sanders was not admissible to corroborate her testimony.

The car in which Jack Sanders and Mr. and Mrs. Cooper were riding, at the time they were passed by the car in which Charles was riding, was travelling north, and Jack Sanders and Mr. and Mrs. Cooper continued driving north until they came to the place of the collision. When they reached there, quite a number of cars had stopped, and some of the passengers in these cars were assisting around the place of the accident. As stated above, Jack Sanders and Mr. and Mrs. Cooper testified as to the rate of speed of the car in which Charles was riding at the time it passed their car. On this point, Judge Campbell made the following argument as reflected by appellants' bill of exception No. 1:

"Mr. Campbell: It is strange indeed. According to their testimony there were ten or eleven cars there at the scene of the wreck, and when they were talking to Mr. Foreman and Mr. Collins there were fifteen or twenty cars there at the scene of the wreck. So that would mean that every car that reached there after the scene of the accident, traveling in a northerly direction, that were ahead of these boys, would have to have passed by those negroes before the wreck occurred. Why didn't they get some that they had passed right recently—(interrupted)

"Mr. Hightower: We object to that, it is outside the record, and it is highly prejudicial and it is not justified by anything in the record.

"Mr. Campbell: I repeat, gentlemen, that every car that reached the scene of that accident, going in a northerly direction, after the wreck, reached there after the wreck, traveling in a northerly direction, that were ahead of these boys that were there, would have had to be passed by those negroes or they wouldn't have beat them there. And I say it is borne out by the evidence. Then why did they pick out somebody twenty minutes behind them when they had these others that they only recently passed.

"Mr. Hightower: We take the same objections and ask the court to instruct the jury not to consider it.

"The Court: Stay in the record.

"Mr. Hightower: We ask the court that the jury be instructed not to consider it.

"Mr. Campbell: We insist we are in the record.

"The Court: Overruled.

"Mr. Hightower: Note our exception."

We overrule the exception that this argument was prejudicial and was not justified by the record. Judge Campbell's statement that certain of the cars "would have had to be passed by those negroes or they would not have beat them there," was not in the nature of testimony given by Judge Campbell, but was a deduction drawn by him from the evidence.

Appellants' sixth point is that the charge "should have expressly limited a recovery to such damages as proximately resulted from the negligence of the appellants." The charge was not subject to this exception. Special issue No. 10, submitting the measure of damages suffered by Charles, was as follows:

"What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence will fairly and reasonably compensate plaintiff, Charles Applebhy, for the injuries, if any, proximately resulting to him on account of the collision of the car in which he was riding with the truck driven by Oliver O. Stanbury, on the occasion in question?

"You will answer this question by stating the amount in dollars and cents, if any you find.

"In passing upon the foregoing issue, you are instructed that you may take into consideration the following elements of damage and none other."

This charge expressly limited his recovery to the damages "proximately resulting" to him "on account of the accident." The charge in connection with this issue limited his recovery (a) to the physical pain and mental suffering from the date of the injury to the day of the trial, and (b) to such as would be suffered by him in the future; both of these elements were restricted by the phrase, "and proximately resulted to Charles Applebhy from the injuries, if any, received by him as a result of said collision on the occasion in question." The third element of recovery in Charles' favor was, "The impairment of ability of Charles Applebhy to earn money, if any, you find from a preponderance of the evidence, he will, in all reasonable probability, suffer in the future, after reaching the age of twenty-one years, on account of the injuries, if any, received by him on the occasion in question, less, however, any sum, if any, you may have awarded plaintiff, Pearl Davis." It is clear to our mind that under the wording of this charge, limited by the language of special issue No. 10, "the following elements of damage and none other," constituted a sufficient submission of proximate cause.

Issue No. 9 submitted the measure of damages suffered by Charles' mother, and was as follows:

"What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence will fairly and reasonably compensate plaintiff, Pearl Davis, for the damages, if any, sustained

by her by reason of the injuries received by Charles Applebhy on the occasion in question?

"You will answer this question by stating the amount in dollars and cents, if any you find.

"In passing upon the foregoing issue you are instructed that you may take into consideration the following elements of damage and none other."

This issue was followed by a charge limiting the mother's recovery to the loss of earnings by the minor from the time of the injury to the time he should attain his majority, "suffered by reason of the injury" received by him in the collision; the loss of contributions he would have made but "will be unable to make by reason of the injuries on the occasion in question"; and compensation for doctor's bills made "reasonably necessary on account of the injuries, if any, received by Charles Applebhy, as the result of said collision." This charge was a sufficient submission of the issue of proximate cause.

■ We overrule the exception that the issues on the measure of damages were "misleading and confusing and permitted the jury to assess double recovery."

■ After the accident, appellees' attorneys took the sheriff with them to make a survey of the place of the accident, and the sheriff testified as to the facts found by him upon the ground. The jury panel was exhausted, and the sheriff, under direction of the court, picked up certain talesmen, who were taken on the jury. On the trial, immediately after appellants learned the sheriff's part in making the survey of the place of the accident, they moved for a mistrial on the ground that the sheriff "had helped the plaintiffs prepare their case for trial and was a material witness for the plaintiffs." Their point is that the sheriff was disqualified to act as sheriff and to select the talesmen, and that had they known the sheriff's part in preparing the case for trial they would have scratched certain of the talesmen. They do not contend that the sheriff was corrupt, or biased in favor of appellees, or prejudiced against them. In their brief they say: "By this proposition it is not sought to reflect on Mr. Kimball, the sheriff; it would be admitted that he is a good man." Appellants cite no authority to support their proposition, and we know of no authority in point; in fact they say, "It

will be admitted that defendants have found no authorities exactly in point, but that they are standing simply upon their rights as citizens on the broad ground that such conduct on the part of the sheriff is not in keeping with his constitutional oath of impartiality and is contrary to public policy." This point is overruled.

■ We overrule appellants' points against the testimony of J. J. Collins, impeaching the witness Jack Sanders. This testimony extends over many pages of the statement of facts, and covers 12 pages of appellants' brief. We have examined the record and believe that the predicates laid support the impeaching testimony.

■ The court did not err in refusing to grant a postponement of the trial to give appellants an opportunity to secure the testimony of Houston Cooper and his wife, Mabel Cooper, to corroborate the statement of Jack Sanders. Due diligence on the part of appellants would have advised them that Mr. Collins and Mr. Foreman had taken a statement from Jack Sanders in the presence of Mr. and Mrs. Cooper.

■ The court submitted with the charge a form of verdict to be filled out and signed by the jury, with parts of the answers of the jury written thereon; thus, on one issue, "It ——— the sole proximate cause." The jury was simply required to fill in the dash with the word "was" or "was not." This action by the court did not constitute error.

■ The judgment awarded one-half of the damages found by the jury in favor of Charles to his attorneys. Appellants assign error that this award was without support in the pleadings, and that a payment to the attorneys of the amount awarded them would not constitute a discharge of the damages found in favor of Charles. We sustain this assignment. On this point we direct that 50 percent of the recovery awarded Charles be deposited in the registry of the court, subject to disbursement under orders of the court on a proper showing by the interested attorneys.

■ We overrule the assignment that the judgment in favor of Charles was excessive. The following testimony by Dr. W. W. Flowers, as summarized by appellants, supports the verdict: "Dr. W. W. Flowers testified that he saw Charles Applebhy in the Livingston Hospital on August 25th and that his arm was cut and

mashed to such an extent it had to be cut off; that he had a deep cut on the left side of his face, rough cut or tear on the left leg and three or four cuts on the right side; that the cut on his neck had healed but the scar had left a ridge, the only effect of which was appearance; that the injury to the neck, leg and side were of such a nature as to cause physical pain; that the injury to his arm was such as to cause quite a bit of physical pain; that he was in the hospital from August 25 to September 13th; that he was brought back to the hospital on October 9th because the arm had not healed and went home on October 22nd and the arm was practically healed when he left; that it is characteristic of a person who loses an arm to talk of feeling pain as long as they live; that the effect of this bothers and irritates him; that the hospital, doctors and medicines was the total sum of $289.00."

Reformed in the respect noted above, and as reformed affirmed.

## On Rehearing.

We have corrected the opinion, on appellants' exceptions, substituting "appellants" for "plaintiffs" in the paragraph beginning with the sentence, "Appellants made Sidney Lewis, the driver of the car in which Charles was riding, a party defendant." The context showed the error in our use of the word "plaintiffs." In our opening statement we make it clear that the suit was instituted by appellees against appellants, Houston Oxygen Company, Inc., and Oliver R. Stanbury. Again, in the paragraph in issue we state that Sidney Lewis was made a party defendant by appellants. On this issue, at appellants' request, we make the following fact conclusion: "Plaintiffs did not make Sidney Lewis, the driver of the car in which Charles was riding, a party defendant, and sought no recovery whatsoever against him as a joint tort-feasor, but he was made a cross defendant on a cross action filed by appellants in which they sought to recover judgment over and against him as a joint tort-feasor."

We overrule appellants' request to find that appellees offered "no evidence" on the issues of contributions to the support of Charles Applebhy by his father, and that the father had made no effort to keep in touch with Charles. In our judgment, the fact conclusions stated in the opinion on these issues have support in the general intendments arising on all the evidence.

Dallas Railway & Terminal Co. v. Boland, Tex.Civ.App., 53 S.W.2d 158, 159, cited by appellants on rehearing, does not support their fourth point against the definition of unavoidable accident. The case at bar is for damages growing out of a collision, and all the parties to the collision were parties to the suit. In the Boland case there was a sharp issue as to whether the Dallas Railway & Terminal Company or McVey injured the two boys, or whether the two boys were injured through the negligence of the company or McVey, or whether by their joint negligence. As an abstract statement of the law, the definition in that case of "unavoidable accident" was correct; the issue was that it should have been given an affirmative application to the peculiar facts. Again, the issue on this point in the two cases is not the same. In the Boland case, the court stated the issue as follows: "Each of appellants objected to the issue as submitted, and requested the court, in lieu thereof, to submit separate issues for the jury to determine whether it was an unavoidable accident in so far as the bus company and the boys were concerned and whether it was an unavoidable accident in so far as McVey and the boys were concerned; appellants' contention being that, under the peculiar facts in the case at bar, the jury might have found that as to one of them, or as to each of them if the issue had been submitted separately, that the injury was the result of an unavoidable accident."

And on the issue, the court made the following legal conclusion: "While the definition as given by the court is the ordinary and accepted definition of an unavoidable accident, where, as in this case, there was no connection between the bus company and McVey, and appellees had alleged entirely separate and distinct acts of negligence on the part of each, the trial court should have submitted to the jury separately as to each defendant the question as to whether the injury was an unavoidable accident."

In the case at bar, the exception as brought forward in our opinion does not present that point.

On appellants' assignment against the argument of Judge Fox Campbell, at their request we make the following additional

fact conclusion: "The negro's car passed the Coopers and Jack Sanders south of the Town of Moscow; the collision occurred north of the Town of Moscow and Highway 35, which ran through the town of Moscow."

All other requests for additional fact conclusions are denied. The motion for rehearing is overruled.