**AIRLINE MOTOR COACHES, Inc., v. FIELDS et al.**

No. 3909.

Court of Civil Appeals of Texas. Beaumont.
Jan. 29, 1942.

Rehearing Denied Feb. 25, 1942.

Sewell, Taylor, Morris & Connally and Ben G. Sewell, all of Houston, and Musslewhite & Fenley, of Lufkin, for appellant.

Mantooth & Denman and Collins, Williams & Garrison, all of Lufkin, Troy T. Stokes, of Houston, Lightfoot, Robertson & Gano, of Ft. Worth, and Baker, Botts, Andrews & Wharton, of Houston, for appellees.

WALKER, Chief Justice.

On the 10th day of June, 1940, there was a collision on highway No. 59 in Harris County between a bus owned and operated by appellant, Airline Motor Coaches, Inc., and a laundry truck owned and operated by appellee, W. G. Smith, and a lumber truck owned and operated by appellees, G. R. and Ben Ogletree. Appellee, Dee Field, a fare paying passenger on appellant's bus, was injured in the collision, and instituted this suit in district court of An-

gelina county against appellant and appellee Smith and the driver of the laundry truck, Homer Davis, for the damages suffered by him in the collision. Appellant impleaded G. R. and Ben Ogletree, the owners of the lumber truck, and their driver, Earl McAllister. The jury convicted appellant of certain acts of actionable negligence, and acquitted the drivers of the laundry truck and of the lumber truck of negligence, and found that the "acts" of the drivers of the laundry truck and the lumber truck were not the sole proximate cause of the collision, and that the collision was not the result of an unavoidable accident, and assessed appellee's damages at the sum of $7,500. On the verdict, judgment was in favor of appellee, Dee Fields, against appellant for the damages assessed by the jury, and that this appellee recover nothing against appellees, W. G. Smith and his driver, Homer Davis. Appellant was denied judgment over against appellees, W. G. Smith and his driver, Homer Davis, and against appellees G. R. and Ben Ogletree, and their driver Earl McAllister; appellant was also denied contribution against these appellees. Appellant has duly prosecuted its appeal to this court.

The court in its charge to the jury made the following submission of the issue of unavoidable accident, by special issue No. 94:

"Was the collision in question an unavoidable accident?

"Answer yes or no.

"Unless you find from a preponderance of the evidence that the collision in question was not an unavoidable accident you will answer the above issue 'Yes,' but otherwise you will answer it 'No'."

In connection with special issue No. 94, the court submitted the following definition of "unavoidable accident": "By unavoidable accident is meant the unexpected happening of an event which was not proximately caused by the negligence of Forest King."

Appellant reserved exceptions to this definition by the court sufficient to require the court to submit the following definition of unavoidable accident: "By unavoidable accident is meant the unexpected happening of an event which occurred without having been proximately caused by the negligence, if any, of the driver of the motor bus of Airline Motor Coaches, Inc., the driver of the lumber truck of Ogletree Lumber Company or the driver of the laundry truck of W. G. Smith."

When the court first submitted his charge to appellant for exceptions, it contained the definition submitted to the jury. Thereupon appellant reserved its exceptions to the definition, when the following proceedings were had:

"Upon the presentation of such objection the Court made his ruling and changed his charge as follows:

"In view of the foregoing objections and exceptions urged thereto by Airline Motor Coaches, Inc., the Court is now changing his main charge to read as follows, as shown by Special Issue No. 94 with the accompanying definition:

"By unavoidable accident is meant the unexpected happening of an event which occurred without having been proximately caused by the negligence, if any, of the driver of the motor bus of Airline Motor Coaches, Inc., the driver of the lumber truck of Ogletree Lumber Company or the driver of the laundry truck of W. G. Smith.

"The defendant, Airline Motor Coaches, Inc., then objected to such definition of unavoidable accident as follows:

"Defendant, Airline Motor Coaches, Inc. further objects and excepts to said definition of the term 'unavoidable accident' following Special Issue No. 94 * * *" setting out the objection in full; it is objection No. 20.

"Upon consideration of such latter objection the Court made his ruling and disposed of said objection as follows:

"Now, in view of the latter objection and exception made by the defendant Airline Motor Coaches, Inc. to the Court's charge, after the Court has changed his charge to conform with the first objection and exception made thereto as to the form and manner of submitting 'unavoidable accident', the Court now concludes to submit the issue as originally contained in the Court's charge but only doing so in view of the last objection and exception made by the defendant Airline Motor Coaches, Inc., after the Court had agreed to change his definition to conform with their exception and suggestion that the Court should include in said definition the defendants other than the Airline Motor Coaches, Inc. Moreover, the Court has requested the attorneys for the defendant, Airline Motor Coaches, Inc. to prepare a

definition of 'unavoidable accident' which they have declined to do and submit the same to the Court. The defendant Airline Motor Coaches, Inc. did not object to the definition of 'unavoidable accident' for the failure to include the negligence of the plaintiff, Dee Fields.

"No further objections were made to the Court's charge by defendant, Airline Motor Coaches, Inc."

■ Appellant was required to make an election of the theory on which it wanted the case submitted to the jury. When the court submitted a definition to appellant fully meeting the exceptions against the first definition, then appellant did not have the right to reserve exceptions against the amended charge, calling upon the court to define the term as originally defined. By its exceptions, appellant put the court to an election on the definition he submitted, and appellant can not now complain of the court's election.

■ If we are in error in our conclusion on estoppel, then we say the definition was not erroneous. In the ordinary negligence case, as between the plaintiff and one defendant, no difficulty should now be incurred in submitting to the jury a proper definition of unavoidable accident. Dallas Ry. & Terminal Co. v. Darden, Tex.Com. App., 38 S.W.2d 777; Independent Eastern Torpedo Co. v. Carter, Tex.Civ.App., 131 S.W.2d 125; Thurman v. Chandler, 125 Tex. 34, 81 S.W.2d 489; Texas & P. Ry. Co. v. Edwards, Tex.Com.App., 36 S.W.2d 477; Southern Ice & Utilities Co. v. Richardson, 128 Tex. 82, 128 S.W.2d 956; Green v. Texas & P. Ry. Co., 125 Tex. 168, 81 S.W.2d 669. The difficulty in this case arises out of the confusion in authorities in attempting to define the term "unavoidable accident" as between two or more defendants. Hicks v. Brown, Tex. Civ.App., 128 S.W.2d 884; Glazer v. Wheeler, Tex.Civ.App., 130 S.W.2d 353; Dallas Ry. & Terminal Co. v. Boland, Tex.Civ. App., 53 S.W.2d 158; Johnson v. Hodges, Tex.Civ.App., 121 S.W.2d 371; Dallas Ry. & Term. Co. v. Redman, Tex.Civ.App., 113 S.W.2d 262; Southern Transp. Co. v. Adams, Tex.Civ.App., 141 S.W.2d 739; Yellow Cab Co. v. Underwood, Tex.Civ. App., 144 S.W.2d 291; Anizan v. Paquette, Tex.Civ.App., 113 S.W.2d 196; Houston Oxygen Co. v. Davis, Tex.Civ.App., 145 S.W.2d 300. The point was again before the Supreme Court in Hicks v. Brown, 136

Tex. 399, 151 S.W.2d 790, where it was said that in this type of case—two or more defendants—the question of unavoidable accident should be submitted as to "all of the parties involved, by including in the definition the term 'unavoidable accident' each of the acting parties involved in the accident or catastrophe which resulted in the injury."

Appellant insists that by the court's definition it suffered injury in the following respects: (1) This "controlling defensive theory was in reality not submitted at all." (2) "In the second place, the approval of the submission of 'unavoidable accident' in a case involving two or more joint tort-feasors, simply inquiring as to whether the collision was not proximately caused by the negligence of one of them, would make a farce of the defensive theory of unavoidable accident. The plaintiff would simply look through the list of joint tort-feasors—the active participants in the collision or event resulting in his injury—and select the least culpable of the lot, and have the court submit an issue as to whether the collision was not an unavoidable accident, defining that term as an event not proximately caused by the negligence of that particular party. Worse than that, if approval is to be given to the submission of 'unavoidable accident' by simply requiring that the plaintiff obtain a negative answer to an issue inquiring as to whether the collision was not proximately caused by the negligence of one of the defendants, the plaintiff could always take the position that 'unavoidable accident' was in fact submitted in that portion of the court's charge inquiring as to whether such defendant was negligent in any of the respects relied upon for recovery." (3) The definition "had the effect of singling it out from the other participants in the collision and placing the spotlight of inquiry upon the bus driver alone." (4) "Another fallacy in the argument that a definition of 'unavoidable accident' which omits the mention of one or more of the active participants in the event is more favorable to those mentioned lies in the fact that the burden is upon the plaintiff to establish by a preponderance of the evidence the negative of this issue. The burden being upon the plaintiff to prove that the collision was not the result of an unavoidable accident, to discharge this burden it is incumbent upon the plaintiff to establish by a preponderance of the evi-

dence that his injuries were not caused by something other than negligence of the drivers of the three vehicles involved in the occurrence resulting in his injury. Obviously, the burden as to him would be less onerous if he simply has to show that the cause of his injury was something other than the negligence of only one of the drivers. The inclusion of the laundry truck driver and the lumber truck driver to the scope of the inquiry would, indeed, add to the plaintiff's burden, since the burden of proof on this issue is upon the plaintiff, not the defendants."

So, on its argument appellant suffered injury by the court's definition notwithstanding the jury convicted its driver of acts of negligence proximately causing the accident, acquitted the drivers of the laundry truck and the lumber truck of negligence proximately causing the collision, and found further that the "acts" of the drivers of the laundry truck and the lumber truck were not the sole proximate cause of the collision, and by limiting the issue to the scope of the court's definition, the jury found that the collision was not the result of an unavoidable accident. Appellant concedes on authority of Hicks v. Brown, supra; Orange & N. W. Ry. Co. v. Harris, 127 Tex. 13, 89 S.W.2d 973; Independent Eastern Torpedo Co. v. Carter, Tex.Civ.App., 131 S.W.2d 125; Hankamer v. Roberts Undertaking Co., Tex. Civ.App. 139 S.W.2d 865, "that in order to raise the issue of 'unavoidable accident' there must be some evidence raising an issue that something other than the negligence of one of the parties caused the injuries." What "something" other than appellant's negligence, on the evidence and the verdict of the jury, could have been sent to the jury which was not submitted by the court's definition? What "something" was excluded from the consideration of the jury which, as affecting appellant, would have made the collision an unavoidable accident? Certainly, whether or not the collision was an unavoidable accident as between the laundry truck and the lumber truck was an immaterial inquiry on the issue of appellant's liability. Appellant's argument would make the submission of that vermiform appendix to our tort law—the issue of unavoidable accident—a tragic farce. Under our amended rules, it seems to us a reasonable burden on the part of the complaining party to require him to submit to the jury "that something other than the negligence of one of the parties"—to use appellant's term—which constitutes unavoidable accident, rather than to send to the jury broad issue—of unavoidable accident—on the entire record.

It is our conclusion that the court's definition has reasonable support in Dallas Ry. & Terminal Co. v. Price, 131 Tex. 319, 114 S.W.2d 859.

■ The court's definition was not on the weight of the evidence. In support of this assignment appellant brings forward the following exception to the court's charge: "Defendant Airline Motor Coaches, Inc., objects and excepts to said definition of the term 'unavoidable accident', following Special Issue No. 94 contained in the court's charge for the reason that it is upon the weight of the evidence in that it assumes the operator of the bus was guilty of one or more acts of negligence on the occasion in question."

Appellees—all of them—make the point, in which we concur, that this exception was not urged against the definition given by the court, but against the definition withdrawn by the court, as shown by the statement made above. On the distinction between a definition submitted by the charge and a special issue, the definition was not error. Dallas Ry. & Terminal Co. v. Price, supra; Phoenix Refining Co. v. Tipps, 81 S.W.2d 69, 81 S.W. 2d 60; 30 Tex.Jur. 712.

■ The measure of damages suffered by appellee, Dee Fields, was submitted by special issue No. 95: "What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence will be a fair and reasonable present compensation to plaintiff for the damages, if any, sustained by him as a direct and natural result of the injuries, if any, suffered by him as a direct and proximate result of the collision?"

Appellant's assignment against this definition is that "the jury was not confined to damage directly and proximately caused by the negligence, if any, of the driver of the passenger bus." We overrule this exception on the following argument advanced by appellee, Dee Fields:

"The issue did not ask as to the damages caused by the respective defendants nor did it ask particularly as to damages caused by the appellant here, the

issue did not refer to any defendant—it was abstract. Liability for damages, if any, was to be determined by other issues entirely apart from Issue No. 95. And the liability of the appellant for damages proximately caused by its negligence was properly submitted in other issues which inquired if appellant's driver did certain acts, if such acts were negligence, and if such acts were the proximate causes of the collision. And likewise the Court submitted other issues as to each of the other defendants of a like kind. So that the issue of damages was properly, correctly, submitted—that is, was the appellant's negligence the proximate cause of the collision, and what sum of money would compensate plaintiff for the damages 'sustained by him as a direct and natural result of the injury * * * suffered by him as a direct and proximate result of the collision', which issues together and combined absolutely limited the damages for which appellant could be held liable to those proximately caused by its negligence. * * * And there were no objections made to the explanatory instructions given in connection with the issue. The issue itself, and the explanatory instructions also, did limit the jury to a consideration of damages which were a direct and proximate cause of the collision which collision must have been the proximate result of appellant's negligence before it could suffer any judgment for damages.

"Another consideration: The Court, as he had the right to do, and as safe practice demanded he should do, submitted the issue on damages and the explanatory instructions therewith abstractly, so that the jury's answer would give the measure no matter which one or more of the defendants was found responsible for the damages because of its negligence."

■ Substantive error was not committed by appellees, the Ogletrees and their driver "in offering in open court, in the presence of the jury, to have the Ogletree Lumber Company truck alleged to have been involved in the collision brought to the court house for the purpose of the jury's inspection." The following statement answers this proposition:

Appellant complains only of the misconduct of Mr. Gano, counsel for Earl McAllister and Ogletree Lumber Company, "in offering in open court in the presence of the jury to have the * * * truck

* * * brought to the Courthouse for the purpose of the jury's inspection." No complaint is made of what counsel for plaintiff, Mr. Collins, had said or rather asked. The proposition is said to be germane to Assignment 34. Assignment 34 is that "John T. Gano, attorney, etc. * * * was guilty of misconduct materially prejudicial to the rights of this defendant in offering in open Court * * * to have the lumber truck and semi-trailer * * * brought to the Court for the purpose of the jury's inspection." There is no assignment in the brief referring to Mr. Collins' question. Mr. Collins' question which occasioned the statement by Mr. Gano was, "with Mr. Ogletree's permission, if it should become important, do you have any objection to driving the truck here and let the jury inspect it to see how it is made?" The witness then said the truck was being used in the woods, that the trailer and bed was being used on the truck witness was driving, that is, at the sawmill. Nobody made any objection but the attorney for appellants, Mr. Musslewhite, asked the witness:

"Q. How far is the truck from the mill? A. Two miles.

"Q. It is not much trouble to bring it into the mill? A. No, sir."

And then, at the end of the testimony, the following occurred: "Mr. Sewell: If counsel desires to have the truck and trailer brought up here for the jury's inspection, we have no objection." "Mr. Collins: Well, I'll say we want it and bring it up here." "The Court: We are not going to open this up (the testimony) any more." It thus appears that the trial court, after the offer had been made and accepted by appellant, in language of American Nat'l Ins. Co. v. Hammond, Tex. Civ.App., 91 S.W.2d 432, "of his own motion promptly intervened and assumed the responsibility" for refusing the jury the right to inspect the truck.

■ We give appellant's sixth proposition: "The court erred in refusing to sustain appellant's motion for new trial because of the misconduct of the attorney for cross-defendant W. G. Smith in stating to the jury, in the course of his closing argument: 'What happened to Forest King right after the accident? He was hustled off to the sheriff's office and they took a statement from him,' over the objection of appellant that said argument

was outside of the record, inflammatory, and prejudicial."

Appellant's objection to the argument was that it was "outside of the record, inflammatory, and prejudicial." Whereupon the attorney making the argument stated in the presence of the court and jury, "We withdraw that statement." The error in the argument was cured by its withdrawal by the counsel who made it.

■ We overrule the assignment that the damages assessed by the jury were "so grossly excessive as to plainly indicate that the jury was actuated by motives of sympathy for the plaintiff, or by bias and prejudice, and is so disproportionate to the injuries as to plainly indicate that the jury misinterpreted the evidence." Appellant testified as to the extent of his injuries, "the terriblest lick I ever got"; the blow knocked a hole in his head, and injured his back and head; and rendered him unconscious; he suffers pain continuously and has been attended by a doctor regularly since his injury; he is able to engage only in light work, and is unable to perform a full day's work. Dr. L. H. Denman testified that he first treated the plaintiff for the injuries in question on June 17, 1940, at which time he made a complete physical examination; that he found plaintiff suffering with such spasticity and rigidity of the muscles of the lower back, a deep laceration on the scalp, causing some infection, and a much exaggerated nervous system; and also a fracture of the bony structure of the lower spine; as to the nature of plaintiff's injuries and incapacity, that in his opinion, because of the injuries suffered to his spine, the muscles of his lower back and his head, plaintiff would never be able to engage in any hard manual labor and as an explanation · therefor said "to the extent, we know where you receive a fracture of bone of that type, there is a good deal of trauma that had to cause it, and you have a good deal of destruction of soft tissue in that region, as to the muscles and the fascia covering each muscle; to the extent the fascia is so destroyed, it causes each muscle to adhere to each other, therefore destroying each muscle's independent action, which prevents him from using his back in a normal manner, such as bending forward, or backward or laterally. This condition is caused on account of the muscles' independent action being destroyed and invariably causes a great deal

of pain and discomfort when you have normal function interfered with of the muscles; that an injury of this character would be likely to produce pain and discomfort when plaintiff attempted to engage in manual labor; that he had seen this patient practically every week since June 17, 1940, and had seen no improvement in his condition.

It follows that the judgment of the lower court should be affirmed, and it is accordingly so ordered.

Affirmed.