## Turpin v. Commonwealth.

(Decided October 11, 1910.)

## Appeal from Rockcastle Circuit Court.

1. Criminal Law—Misconduct of Counsel in Argument.—It is error for the commonwealth's, or other attorney, in argument to state facts of an evidential nature in the case not in evidence before the jury.

2. Same—Duty of Trial Court.—When the commonwealth's, or other prosecuting attorney, violates the rule forbidding improper argument and bringing into the case facts of an evidential nature not proven before the jury, upon objection by the accused, the trial court should reprimand offending counsel and admonish the jury, and where the offense is such as that the probable effect of the improper statement cannot probably be remedied by the court's admonition, the court should direct the jury to be discharged, the defendant consenting, and a new trial ordered.

3. Same—Misconduct of Juror.—When the court was made aware that a juror in violation of the court's admonition, had suffered a relative of the accused to approach him during the trial and to discuss with him the case on trial, it is the duty of the court to bring the fact to the knowledge of counsel in the case. If the prosecution elects to bring evidence of the fact to the jury as evidence, as other evidence is introduced in the case against the accused, it must show that accused was party or privy to the improper conduct, when the whole matter will be for the jury as to the effect of the transaction as illustrating the guilt or innocence of the accused. If no evidence on that point is introduced before the jury, the court should not suffer it to be commented on in their presence. The offenders may be tried for contempt in the presence of the jury, or not, as the trial court in its discretion may adjudge.

4. Improper Argument—Effect of Court's Admonition.—A statement in argument by the prosecuting attorney that "an outraged populace is appealing to you to do your duty in the case," was improper. Where the court rebuked the offending counsel and. charged the jury to disregard the statement, the effect of the misconduct of counsel was cured.

J. W. BROWN and C. C. WILLIAMS for appellant.

JAMES BREATHITT, Attorney General, and TOM B. McGREGOR, Asst. Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE O'REAR—Reversing.

Appellant was convicted of the crime of voluntary manslaughter. He has had two trials, each resulting in verdict of guilty. The verdict upon the first trial was set aside and a new trial granted by the circuit court upon the ground of newly discovered evidence. There appears to have been some difficulty in obtaining a qualified jury on the second trial. While the jury was being empanelled one of the veniremen notified the court that he had been approached by a son-in-law of appellant, who sought to influence his verdict, should he be selected. The court upon a trial of the party charged, found him guilty of contempt and punished him. The jury was finally selected and the trial begun. It lasted for several days. Toward the close of the trial and at the noon adjournment, while the jury was in charge of the sheriff under admonition to be kept together, and not suffer any one to approach them on the subject of the trial, they were taken to the public water-closet at the court house by the sheriff. One of the jury, necessarily, or under the pretense of necessity, went into the closet, the others and the sheriff remaining outside. A son of appellant then came up and went into the closet also. He claims that he did not know that it was occupied, did not know the juror, and said nothing to him; which the juror confirms. While they were in the closet the presiding judge of the court, having occasion to use it, and not knowing it was occupied, went in there also, when he found the parties in earnest, and apparently confidential conversation. When they saw him they appeared confused and hurriedly withdrew. The jury had been put in charge of the sheriff by the court. But, without the knowledge of the court, and as the judge certifies, to his

surprise, they had been turned over to a deputy sheriff, who was related to the accused. The judge reported what he had seen to the Commonwealth's Attorney, and issued a rule against appellant's son and the juror to answer for contempt, but the rule was not tried or executed until after the trial of the principal case. There was no evidence introduced before the jury at the trial of this case of the foregoing circumstances. In the concluding argument of the Commonwealth's Attorney, he used this language which was objected to by the accused, but the court overruled his objections and refused to admonish the attorney, or to withdraw the remarks:

"There is one man on this jury who has been 'fixed' in this case. This fact is known by the judge on the bench. Eleven of you have not been 'fixed.' Eleven of you know who this juror is. I will expect that juror to be for an acquittal, but I expect the other eleven of you to be for a conviction. Judge Frank Finley, while circuit judge and while presiding at the trial of a case, and knowing that one of the jurors had been 'fixed' to find for the defendant, peremptorily instructed the jury to find the defendant guilty, and afterwards set the verdict aside. I appeal to the 'fixed' juror to look at the emblem of justice here on the judge's stand, the beautiful figure of a woman, blindfolded with the scales of justice equally poised in her hand. She administers justice without fear and without knowing any man. She is blindfolded as shown by this figure."

The defendant then moved the court to discharge the jury, which was also overruled.

Another attorney for the Commonwealth in his argument of the case to the jury, said:

"A great and outraged populace is appealing to you to do your duty in this case."

That remark was objected to. The court sustained the objection and admonished the jury not to consider the statement. These arguments of counsel are the only grounds urged for a reversal.

The matter last quoted, irregular and improper as it was, was probably cured by the admonition of the court. Whether we would have reversed for it alone is not necessary to decide. But the other matter is more serious. It contained a statement of fact, not in evidence before the jury, of a most damaging character as affecting the guilt of the accused. It charged that the fact was within the personal knowledge of the presiding

judge of the court. When the accused objected to the
character of the argument and his objection was over-
ruled by the judge, it tended to confirm the attorney's
statement that the fact existed, and was within the
judge's knowledge. It also indicated to the jury that the
argument was not improper, which is to say not illegal,
and that therefore it was a matter which they were
at liberty to, perhaps under the duty to, consider. The
statement of the attorney was evidence of a clearly in-
criminatory nature. If one accused of crime flees, or
attempts to bribe a witness, or a juror, or to fabricate
evidence, all such conduct is receivable as evidence of
his guilt of the main fact charged. It is in the nature of
an admission. For, it is not to be supposed that one
who is innocent and conscious of the fact would flee, or
would feel the necessity for fabricating evidence. (Mor-
iarty v. Lou. C. & D. Ry. Co. L. R. 5 Q. B., 314; Winchell
v. Edwards, 57 Ill. 41; Commonwealth v. Webster, 5
Cush., 316; Commonwealth v. Brigham, 147 Mass. 415.)
Upon the same principle, one who is innocent would not
be apt to resort to bribery, either of a witness, or of a
juror, to insure his acquittal. Consequently, if he re-
sort to that course, it is evidence from which the jury
may infer guilt. At least, it is evidence corroborating
the other evidence of guilt, and may tend strongly to
remove any doubt left in the mind of the jury as to the
prisoner's guilt. It would have been competent for the
prosecution to have introduced evidence that the prisoner
had offered a bribe to a juror to find him not guilty.
The evidence is material in character, and is in chief.
But, like all other evidence of admissions, it is to be re-
ceived guardedly. It is a fact explainable, and, whether
explained by other evidence or not, is solely for the jury
to apply, in the light of the surroundings, and of the in-
telligence of the accused. But in any event he was en-
titled to have the witness who testified to such damaging
facts against him, sworn, and an opportunity for cross-
examination, and for counter evidence. In the course
pursued in this case these rights of the accused were
denied him. Even though there was no doubt of his guilt,
even if it had occurred in the presence of the distin-
guished trial judge and Commonwealth's Attorney, it was
nevertheless a fact to be proven, if it was to be used
against him, like all other facts, by authentic documents,
or out of the mouths of sworn witnesses confronting
him at the bar of the court. Here his son is charged

with having tampered with a juror. It was not shown, nor attempted to be, nor is it claimed, that the prisoner knew of the act, or in anywise authorized it. The young man may have done it on his volition, and out of his anxiety concerning a parent in great trouble. Under such circumstances, criminal though the act be, the prisoner here would be neither legally nor morally responsible for it, and it would not constitute evidence of any kind against him. Yet the effect of the attorney's statement was as if the prisoner had bribed a juror, or had caused it to be done. The circumstance of itself shows the wisdom of the rule requiring the evidence to be heard in court from the mouth of the witness having the knowledge, and subjected to cross-examination, to counter evidence and to explanation. Furthermore, the trial judge did not claim to have heard what passed between the juror and young Turpin. Nor did he see any consideration pass. The circumstance and the conduct of the parties were highly suspicious. More, it was in contempt of the rule and order of the court. Nevertheless, it may have been the result of ignorance, or accident, as it was claimed (though of the latter there is doubt), but there was not conclusive evidence of either motive or consequence. It was certainly explainable, and needed explanation. But opportunity was not afforded for refuting or explanatory evidence. The Commonwealth's Attorney did not claim to have witnessed the transaction. His statement was pure hearsay evidence. On that score also it was error to allow it to go to the jury.

A fair summary of the principle under discussion is found in Wigmore on Evidence, section 1806, as follows:

"A counsel's argument is in its purpose a connected presentation of the facts supposed to have been proved by the evidence tending in favor of his client. He is not a witness. He may have testified as a witness; but in his argument his is solely the functions and rights of counsel. Any representation of fact, therefore, which is made by him in the argument, must not be an assertion made upon his own credit; it must be based solely upon those matters of facts of which evidence has already been introduced or of which no evidence need be introduced because of their notoriety as judicially noticed facts. To bring forward in argument an assertion of fact not of these two sorts is to become a witness; and to be a witness without being subject to cross-examina-

tion is to violate the fundamental principle of the hearsay rule.''

Authorities are numerous and consistent in support of that announcement. This court has had frequent occasion to consider the subject. The rule announced was applied in Cook v. Commonwealth, 86 Ky. 663; Bates v. Commonwealth, 13 Ky. Law Rep. 132; McHenry Coal Company v. Sheddon, 98 Ky. 687; Howard v. Commonwealth, 110 Ky. 356; 22 Ky. Law Rep. 1845.

In Sasse v. State, 68 Wis. 530, the district attorney intimated that some one on behalf of the defendant had tampered with the witness for the state, or spirited him away, and, upon objections being made, remarked that he would prove it before he got through, after which he did not even offer to prove the charge. It was held error, and ground for reversal.

In Nally v. State (Texas), 13 S. W. 672, the prosecuting attorney stated to the jury that he expected to show by a witness that Sam Nally had induced him to leave the county so as not to testify. The court, reversing the judgment, said:

''There was no statement by the district attorney to the effect, and no pretense, that he sought to inculpate the defendant in any manner directly with this attempt to suppress the testimony. Even if the prosecuting officer could have proved what he stated, such testimony would have been clearly inadmissible against defendant, unless he has been directly connected with the matter. Favors v. State, 20 Texas App., 158; Marshall v. State, 5 Texas App., 273. There being no proof that these overtures to the witness were made by the authority or with the knowledge of the accused, such statement by the district attorney was illegal and unjust, and was highly calculated to prejudice the accused. Barbee v. State, 23 Tex. App., 199. Anything Sam Nally, the brother, might have done in the matter, in the absence and without the knowledge of defendant, was most clearly inadmissible against and could not be binding upon him, and offered no reasonable presumption or inference pertinent to the issue in the case for which defendant was on trial, and the court should have so instructed the jury.''

If an effort on the part of the accused to influence witnesses in his behalf to fabricate evidence, or to have the evidence against him suppressed, would tend, and it does, to establish his guilt under the main charge, it is

equally so for him to attempt to corrupt a juror trying his case. The latter act is apt to have even more force in the minds of the jury than the former. For not only is it of equal effect upon the result, if successful, but it is contempt of the tribunal composed of the jurymen. It is an affront to their dignity and the integrity of their body; it is an attempt which would cause them all to be held up to the scorn of the public because of a miscarriage of justice at their hands. It is therefore more likely to be visited by a harsh judgment from the men who have been so insulted. The effort to get before the minds of the jury, thus illegally, matter of such grave importance as conducing to the verdict, was in every probability most prejudicial to the accused. If, perchance, the juror under suspicion were in fact innocent of wrong in the matter, it practically destroyed his independence as a juror, for knowing he was suspected, and thus singled out, he scarcely might dare to act with that independence of judgment on the merits of the case that is essential to a fair trial. He would be more concerned about his own standing, and the effect upon himself of any verdict he might render. The other jurors, not knowing who was alluded to in the remark of the prosecuting attorney, naming the presiding judge as having knowledge of an unlawful effort on behalf of the accused to corrupt one of their number, would look with suspicion upon any one of them who in their private deliberations might express an opinion favorable to the accused. The legitimate influence of such a juror and the force of his reasoning in their consultation would be nullified. From whatever point the matter is viewed we cannot escape the conclusion that the remark was prejudicial and most damaging to the accused. Whatever our opinion might be as to his guilt, and however this court may sympathize with the purpose of the learned trial judge, and applaud his zeal in endeavoring to protect the trial from improper influence from without, we cannot pass over so grave an offense against the plainest, as well as most valuable right of a man charged with crime, a right equally valuable to the public, which is, the guaranty of a fair trial, upon legal evidence only, and face to face with the witnesses who constitute his accusers.

We commend the efforts of the trial judge in endeavoring to protect the jury against outside influence. The question necessarily arose in his mind, what to do,

in view of what he had seen, or thought he saw the evidence of, to prevent a miscarriage of justice. If he should discharge the jury, that would operate to release the defendant, he being then "in jeopardy." If he should content himself alone with punishing as for contempt those engaged in disobeying the rules of the court, that would have no effect on the trial of the principal case, and the mischief feared might be done regardless of the penalizing of the minor culprits. We are of the opinion the trial judge, upon informing counsel in the case what he had observed, should have left it to them to introduce evidence of the fact, by competent means, before the jury. If the evidence connected the prisoner with the matter, it would have been relevant in his case. If the prisoner was not connected with it, then he was entitled to have the jury know the fact, so that they might not impute to him an act for which he was in no wise responsible. The matter thus coming into the trial as evidence, given by witnesses under oath, subject to cross-examination, and contradiction, and all the means by which the truth is sifted out by a trial in court, it would be then for the jury, and be open for such argument based upon it, including such inferences deducible from it, as might fairly be warranted. If the prosecuting attorney had not seen proper to introduce the matter as evidence before the jury in the case on trial, it was at the option of the trial judge to have issued a rule against the alleged offenders, and have tried them then and there, letting it have such effect on the trial of the principal case as it might, controlling its application by appropriate instructions to the jury. That such proceeding would have injected a trial into another trial is an incident of the nature of the offense. It is not unusual, rather it is usual, for the trial court to punish witnesses, attorneys, parties, jurors, or others for contempt committed in the court's presence during the trial, and inflict the punishment generally in the presence of the jury. Whether to do so, depends on the circumstances of the case, and appeals to the sound discretion of the judge.

As neither course suggested was adopted, when the attorney indulged the argument complained of, it should have been withdrawn in such manner as to leave no doubt that its evil effect was removed, or, the court, upon the consent of the accused, should have set aside the swearing of the jury.

We perceive no other error in the record. Judgment reversed, and remanded for a new trial under proceedings consistent herewith.