### SHAW et al. v. PORTER.

No. 14715.

Court of Civil Appeals of Texas. Fort Worth.

Oct. 12, 1945.

Rehearing Denied Nov. 16, 1945.

Martin, Moore & Brewster and Rogers, Spurlock & Love, all of Fort Worth, for appellants.

Rawlings, Sayers & Scurlock, of Fort Worth, for appellee.

McDONALD, Chief Justice.

Appellants were plaintiffs and appellee was defendant in the court below. Appellants alleged that appellant Mrs. Shaw, after having her disabilities of coverture removed, had formed a business partnership with defendant. They alleged that defendant had ousted Mrs. Shaw from the business, and they sought an accounting and a dissolution of the partnership. Judgment was rendered on a jury verdict denying plaintiffs any recovery.

Under their first three points of error appellants complain of the admission of certain testimony tending to show that there was no partnership, and of the submission of the partnership question to the jury, and of the refusal of the trial court to render judgment non obstante veredicto in favor of appellants. Their contentions are based upon the fact that defendant did not in her answer deny the partnership under oath. Appellants argue that the partnership must be accepted as an admitted fact in the absence of a denial under oath, notwithstanding any lack of proof of the partnership, or despite any proof that there was no partnership.

Rule 93 of our rules of procedure provides in part:

"A pleading setting up any of the following matters, unless the truth of such matters appear of record, shall be verified by affidavit. * * *

"f. A denial of partnership as alleged in any pleading as to any party to the suit."

The source of the above portion of Rule 93 was Article 2010 of the Revised Statutes.

The object of the rule and the statute it superseded was, to quote our Supreme Court, "* * * * to require that these facts be put in issue by a sworn denial, and, if this is not done in the manner pointed out, they are admitted facts, and not issuable. And if not issuable by reason of non-compliance with the statute, which prescribes the manner in which such facts shall be made so, there can be no occasion for proof of them, upon the elementary principle that a fact not made an issue by the pleadings is not necessary to be proven." International & G. N. R. Co. v. Tisdale, 74 Tex. 8, 11 S.W. 900, 902, 4 L.R.A. 545.

Appellee argues that appellants are not in position to seek a reversal based upon the lack of a verified denial of the partnership, by reason of the provisions of Rules 67 and 90.

Rule 67 provides in part that when issues not raised by the pleadings are tried by express or implied consent of the parties they shall be treated in all respects as if they had been raised by the pleadings.

Rule 90 reads as follows: "General demurrers shall not be used. Every defect, omission or fault in a pleading either

of form or of substance, which is not specifically pointed out by motion or exception in writing and brought to the attention of the Judge in the trial court before the instruction or charge to the jury or, in a non-jury case, before the rendition of judgment, shall be deemed to have been waived by the party seeking reversal on such account; provided that this rule shall not apply as to any party against whom default judgment is rendered."

Defendant expressly denied the partnership in her answer, but the answer was not sworn to. Plaintiffs filed a reply to defendant's answer, but did not raise the objection that it was not verified. Plaintiff objected to the evidence given in denial of the partnership on the ground that the partnership was admitted under the pleadings in the case and objected to the special issues submitted to the jury on the same ground. In their motion for judgment non obstante they specifically raised for the first time the objection that there was no sworn denial of the partnership.

■ Although it may have been error for the trial court to admit evidence in denial of the partnership and to submit the partnership question to the jury in the absence of a sworn denial of the partnership, it does not necessarily follow that the judgment will be reversed. Before the adoption of Rule 90 it might not have been necessary, in order to lay a predicate for assertion of error on appeal, for the appellant to make objection in the trial court to the lack of a verified denial of the partnership. Thomason v. Berry, Tex.Com. App., 276 S.W. 185. But we believe that Rule 90 has brought about a change in this respect. Under the decisions construing Article 2010, the trial court would have been warranted in giving full effect to the failure to verify the denial of partnership, both by refusing to admit proof that there was no partnership, and by treating the partnership as admitted without submitting the matter to the jury. But he did not do that in this case. We think that he committed error in such respect, but that appellants are in the position of having waived the error by not making the proper objections in the trial court. Rule 90 becomes a part of our rules governing appellate practice in providing that a defect, omission or fault in a pleading is deemed to have been waived by a party seeking reversal on such account, unless he specifically pointed out the defect, omission or fault in the pleading to the trial court. It is not unlike the situation where error in a charge is waived by failure to make a timely objection.

■ Plaintiffs' objections to the evidence, and to the issues submitted to the jury, made on the ground that the pleadings admitted the partnership, were not sufficient to point out specifically to the trial court the real defect in the pleading, to-wit, the lack of verification. The objection raised in the motion for judgment non obstante, made of course after the submission of the case to the jury was too late to meet the requirements of Rule 90.

It is unnecessary to determine whether Rule 67 is applicable to the case.

Appellants cite Hestland Kimbell Grocery Co. v. Forrest, Tex.Civ.App., 151 S.W. 2d 882. The case was tried before the adoption of Rule 90, and is not helpful here.

Appellants also cite Buchanan v. Jean, 141 Tex. 401, 172 S.W.2d 688. We find nothing in that opinion inconsistent with our holding in the present case. We think that our views are in harmony with those expressed in Texas Osage Co-op. Royalty Pool v. Kemper, Tex.Civ.App., 170 S.W. 2d 849, writ refused, where the court held that appellants, by failure to complain in the trial court of the insufficiency of the verification of a pleading alleging non est factum, waived their right to question the sufficiency of the affidavit on appeal.

We overrule the first three points of error.

■ The fourth point of error complains of the admission in evidence of a bill of sale purporting to convey Mrs. Shaw's interest in the business in question to one W. A. Johnson, and of the submission of a special issue inquiring whether the bill of sale was intended by Mr. and Mrs. Shaw and the said W. A. Johnson only as a mortgage to secure Johnson in the repayment of a loan. The jury answered that it was not so intended.

According to the testimony of W. A. Johnson, he and the defendant Miss Glenn C. Porter, first established the business in question, a liquor package store, in the year 1941. He and Miss Porter each put $2,000 into the business and became partners. Johnson sold his interest to Miss Porter in February of 1942, and thereafter he had no further interest in the business. It is not claimed by any one that Johnson had any interest in the business after February

of 1942. There was introduced in evidence an instrument, in the form of a bill of sale of personal property, which purported to convey to Johnson all of Mrs. Shaw's undivided interest in the package store. The instrument was dated August 10, 1942, and was executed by Mrs. Shaw. Mr. Shaw testified that he represented his wife in all dealings pertaining to the business, and that the bill of sale was given to secure Johnson for a loan of several thousand dollars from Johnson to the package store. He said that the money borrowed from Johnson was soon thereafter repaid.

The issue submitted to the jury was not material, in the light of the evidence in the record. Johnson did not contend that he had purchased Mrs. Shaw's interest in the business at the time the bill of sale was executed, or at any other time. Johnson, who represented Miss Porter in the negotiations with Shaw which led up to the establishment of the business, unalterably took the position throughout his testimony that Mrs. Shaw had never owned any interest in the business. He said that the application for a permit to operate the package store was made by Mrs. Shaw and Miss Porter, and that the permit was caused to be issued to them as partners, at Mr. Shaw's suggestion, for the purpose of insuring that Shaw would give his attention to the business, and would run it properly, on the theory that Shaw would then not do anything that might cause his wife to be involved in infractions of the liquor laws. Johnson testified that the bill of sale was obtained from Mrs. Shaw after Mr. Shaw had told Johnson that Shaw and his wife had been having some trouble, and that Johnson wanted to get Mrs. Shaw's name out of the business because she did not own anything and would cause a lot of trouble if she and Shaw should separate.

It therefore appears that an answer by the jury to this issue, either way, would not have supported a judgment either for or against appellants, when the issue is considered in the light of the whole record. Appellee did not rely on the bill of sale to establish the defense made by her pleadings and evidence, which was that Mrs. Shaw had never owned a partnership interest in the package store. There was no claim on appellee's part that she acquired the interest claimed by Mrs. Shaw by the bill of sale in question. There was no error in admitting the bill of sale in evidence, because it tended to prove the contention of the defendant that Mrs. Shaw had never owned any interest in the business. No reversible error is presented under the fourth point.

Complaint is made under the fifth point because the court submitted to the jury an issue inquiring whether W. A. Johnson had authority from defendant to make an agreement with Mr. Shaw creating a partnership between defendant and Mrs. Shaw for the purpose of operating the liquor store in question. The jury answered such issue in the negative.

The evidence shows without dispute that all negotiations looking toward the formation of the business in question were had between Johnson, representing Miss Porter and himself, and Shaw, representing his wife. Mrs. Shaw did not talk to Johnson or Miss Porter, and Miss Porter did not talk to Mr. or Mrs. Shaw, until after Shaw and Johnson had reached an agreement, whatever it may have been, about establishing the business. Appellants argue that the evidence shows without dispute that Johnson had full authority to represent Miss Porter, and to make any and all agreements in her behalf. Miss Porter testified categorically that she did not authorize Johnson to make a partnership agreement whereby Mrs. Shaw should own a half interest in the business and share equally in the profits. We think that the evidence was disputed, and that submission of the issue to the jury was proper. It might have been one thing for Miss Porter to authorize Johnson to make all agreements proper or necessary in the establishment of a business which she and Johnson were going to own as partners, and altogether another thing to authorize Johnson to make an agreement whereby Miss Porter should become a partner with Mrs. Shaw. Miss Porter had been employed by Johnson for more than twenty years, and might have been willing to leave to him the details of organization and management of a business which she and Johnson were going to own as partners. But authority to Johnson to act thus in such a situation would not necessarily amount to authority to organize a partnership between Miss Porter and someone other than Johnson.

The sixth point complains of a portion of the argument of defendant's counsel to the jury. The evidence shows the law firm of Rawlings, Sayers & Scurlock, of Fort Worth, had acted as attorneys for W. A. Johnson in numerous matters. The

evidence also shows, as we have said, that Johnson took a leading role on behalf of his employee Miss Porter in the formation of the business here involved. It was undoubtedly agreed by all parties that the application for a liquor permit should be made by both Mrs. Shaw and Miss Porter. Preparatory to making application for the permit, Mrs. Shaw filed a petition in one of the district courts of Tarrant County for removal of her disabilities of coverture. Article 4626, Revised Civil Statutes (Vernon's Ann.Civ.St. art. 4626). It is undisputed that the petition was prepared in the law office of Johnson's said attorneys, and was signed by said attorneys, acting through Reagan Sayers, the son of one of the partners in said law firm. In the petition for removal of Mrs. Shaw's disabilities it was recited that she had entered into a partnership with Miss Glenn Porter to own and operate the package store in question. In his argument to the jury Mr. Otis Rogers, one of appellants' counsel, stated that the facts justified counsel in saying that Johnson had gone to his lawyers and had told them that Mrs. Shaw was entering into a partnership with Miss Porter, and that defendant's attorneys had been paid a fee to come into court in the suit for removal of Mrs. Shaw's disabilities and tell the court, the same court that was trying the present case, that Mrs. Shaw had entered into a partnership with Miss Porter; and that the court had believed what defendant's attorneys had told him in the disability suit, and would not have entered judgment removing Mrs. Shaw's disabilities if he had not put faith in their representations. Counsel argued further, in effect, that defendant's attorneys now were inconsistent in arguing that no partnership had been created.

In reply to such argument, Mr. Sam Sayers, one of defendant's counsel, said: "They introduced this application before you because they knew that my son, Reagan Sayers, was in Germany and was not available as a witness to deny it."

Reagan Sayers did not testify, nor was there any evidence as to his whereabouts at the time of the trial.

Appellants promptly objected to the argument just mentioned. The trial court sustained the objection, and instructed the jury not to consider the argument, whereupon appellants renewed their objection on the ground that the argument was so inflammatory that the instruction of the court could not remove the harm that had been done.

■ It was improper for Mr. Sayers to go outside the record and state to the jury that his son Reagan was in Germany at the time of the trial. But the question on appeal is whether the error is of such nature that it requires a reversal of the judgment. Much has been written about misconduct of counsel in presenting argument to the jury. The decisions are so well known that it is scarcely necessary to cite them. Especially in recent decisions, the Supreme Court appears to have come to the conclusion that an instruction from the court will remove the harm in many instances. In whatever language it may employ, the appellate court must finally, in every case, decide whether the misconduct probably did harm to the appealing party. Some courts have said that if the error is material, harm will be presumed unless the contrary is shown. But under this view, the court must adjudge the seriousness of the error in deciding whether it is material. So, the result still is that the appellate court must decide, from the record as a whole, whether the error probably resulted in harm to the appellant. The appellate court must, because there is no other way to do it, examine the facts of each case, in the light of the record as a whole, and then, after comparing the situation before it with situations described in other reported cases, try to say whether it is likely that the jury was so influenced by the misconduct in question that it returned a verdict that it otherwise would not have returned.

We are not able to believe that the jury in the present case likely reached a verdict adverse to appellants as the result of the remark of Mr. Sayers that his son was in Germany at the time of trial. Objection was promptly made to the remark, and the court sustained the objection and instructed the jury not to consider it. The record as a whole does not reflect a premeditated plan to appeal to the emotions of the jury on the ground that counsel's son was in Germany. The error is not as serious as the one where a party to the litigation goes out of his way to say that he has been in the armed services, or that he has children in the army or navy, as was done in Seismic Explorations, Inc., v. Dobray, Tex.Civ. App., 169 S.W.2d 739, writ refused for want of merit; and in American Emps. Ins. Co. v. Kellum, Tex.Civ.App., 185 S.W.2d 113, writ refused for want of merit.

Under their seventh point appellants complain of a remark made by appellee's counsel in his argument to the jury. Referring to Mr. Otis Rogers, one of appellants' counsel, Mr. Sam Sayers said, "Otis tried in his argument to hoodwink you as he did in his pleadings." No exception or objection was made to the remark, nor was the court asked to instruct the jury not to consider it. We do not believe that the remark amounted to a reversible error.

Under the eighth and ninth points it is contended that there are irreconcilable conflicts in the verdict. Special issues 1, 2, 3, 4, and 7 are involved. In answer to such issues, the jury found as follows: (1) On or about December 1, 1941, Ruth Shaw and Glenn C. Porter entered into a partnership. (2) Such partnership was to engage in the package store business under the trade name of Acme Package Store. (3) It was agreed by both parties that Glenn C. Porter should receive one hundred per cent of the profits, and that (4) Mrs. Shaw should receive none of the profits. (7) It was agreed and understood between Carl Shaw and W. A. Johnson at the time of and immediately before the opening of the Acme Package Store that the business would be operated under the name of Mrs. Ruth Shaw and Miss G. C. Porter, but that Mrs. Shaw was not to be the actual owner, and was not to receive any part of the profits which might be earned by the store.

The court in his charge defined "partnership" as follows: "Partnership, as that term is used in this charge, means an agreement of two or more competent persons placing their money, effects, labor and skill, or some one or more of them, in a lawful business, with intention to prosecute that business unitedly, and with authority mutually interchanged or specially designated to manage or control the business for the common benefit."

Appellants contend that there is an irreconcilable conflict between the theory of a partnership between the two women, as found in answer to the first and second issues, and the theory that Mrs. Shaw should have none of the profits of the partnership, as found in answer to the third, fourth and seventh issues. Appellants quote the statement found in Speer on Special Issues, Section 431, page 560: "The conflict in findings that destroys the verdict is that irreconcilable difference of finding with respect to an indispensable fact in issue in the case where both findings cannot be true but one or the other of necessity must be false."

The following statement of the rule is equally applicable here: "It will never be presumed that jurors intended to return conflicting answers, but the presumption is always to the contrary. Courts properly refuse to strike down answers on the ground of conflict, if there is any reasonable basis upon which they may be reconciled." Casualty Underwriters v. Rhone, 134 Tex. 50, 132 S.W.2d 97, 99.

"The trial court will and it should reconcile apparent conflict in the jury's answers if this can be reasonably done in the light of the facts of the particular case, the pleadings and the evidence, the manner in which the issues were submitted, and in view of the other findings when considered as a whole." 41 Tex.Jur. 1224.

In answer to the eighth issue the jury found that Carl Shaw and W. A. Johnson agreed on or about December 1, 1941, that the name of Ruth Shaw was to be placed in the application and in the permit of the Acme Package Store for the sole purpose of assuring Johnson that the package store would be lawfully operated, and that Mrs. Shaw should own no actual interest in the business nor be entitled to a share of the profits.

Applying the rules above stated, we find no irreconcilable conflict in the verdict. The jury accepted the version of the controversy presented by the testimony of W. A. Johnson. It was, stated in a few words, that the parties agreed that Mr. Shaw should operate the store; that, to assure that it would be lawfully operated, the permit should be taken in the name of both Miss Porter and Mrs. Shaw; that Mrs. Shaw should own no interest in the business, and should be entitled to none of the profits; and that Shaw should be paid for managing the store. There was, under the verdict, a joinder by Mrs. Shaw in this venture. Under the verdict, she was entitled to none of the profits, but under the undisputed proof, she received benefits from the venture in that her husband was employed as manager of the store and was paid, first a salary, and later a share of the profits. There is no difficulty in interpreting the facts as found by the jury, or in applying the law thereto.

Finding no reversible error, we affirm the judgment.