**AIRLINE MOTOR COACHES, INC., v.
HOWELL et al.**

No. 4340.

Court of Civil Appeals of Texas. Beaumont.

April 4, 1946.

Rehearing Granted and Reversed and Remanded June 27, 1946.

Kemp, Lewright, Dyer, Wilson & Sorrell, of Corpus Christi, and M. M. Feagin, of Livingston, for appellant.

. Allen, Helm & Jones, of Houston, and Campbell & Foreman, of Livingston, for appellees.

COE, Chief Justice.

Appellee, Mrs. Gloria Howell, and husband, H. A. Howell, sued appellant for damages for personal injuries alleged to have been sustained by Mrs. Howell when riding as a passenger upon a bus of appellant, and recovered judgment upon the verdict of a jury for the sum of $20,000.

The injuries alleged to have been sustained by Mrs. Howell were received in a collision between a bus owned and operated by the appellant and a Pontiac automobile being driven by one Robert Hogland on the highway leading from Livingston to Houston, Texas.

Appellees plead and the jury found that appellant was guilty of the following acts of negligence on the occasion of the collision, each of which was a proximate cause of the injuries suffered by appellee, Gloria Howell; that the driver of the bus was operating same at an excessive rate of speed under the conditions and circumstances then existing; that immediately prior to the collision the driver of the bus failed to have the bus under proper control; · that immediately prior to the collision the bus driver failed to keep a proper lookout for other motor vehicles using the highway; that he failed to timely reduce the speed of his bus; that he failed to timely apply the brakes of the bus; that immediately prior to the collision the bus driver was talking to a Mr. Holloway; that immediately before the collision the bus driver could have turned the bus aside sufficiently far to avoid the collision; that prior to the collision Gloria Howell was in a position of peril; that the bus driver discovered the perilous position of Gloria Howell in time, by the exercise of ordinary care in the use of all the means at his command commensurate with his own safety, the safety of the bus and the safety of the other passengers, to have avoided the collision; that after discovering the perilous position of Gloria Howell in time, by the exercise of ordinary care in the use of all the means at his command, and commensurate with his own safety, the safety of the other passengers and the safety of the bus, to have avoided a collision, the bus driver failed to exercise the ordinary care which a careful and prudent person would have exercised under the same or similar circumstances to have avoided the collision, and that such failure was the proximate cause of the injuries to Gloria Howell. In answer to special issue No. 24, the jury found that Mrs. Howell had suffered damages in the sum of $20,000. Several of appellant's exceptions which will be hereinafter discussed are directed at this issue. The jury further found that the collision of the bus with the Pontiac automobile was not the result of an unavoidable accident and that the manner in which the Pontiac automobile was being operated at or immediately before the collision was not the sole proximate cause of the collision of said vehicles.

There is no contention made that the evidence is insufficient to support either of the findings made by the jury. For that reason we will not undertake to set out the facts as revealed by the record other

than such as is necessary for discussing the several points hereinafter discussed. Appellant brings forward in its brief 22 points upon which it requests this court to reverse the judgment of the trial court. It groups the first nine such points in its brief, the first four of which complain of the action of the trial court in overruling appellant's objections and exceptions to special issue No. 26 as submitted by the court to the jury. The remaining five of such points complain of the failure of the trial court to submit to the jury certain requested special issues. We will take them up in the order as presented in the argument.

The appellant plead as the sole proximate cause of the collision in question the following acts of said Hogan in the management and operation of his said automobile at and immediately prior to the collision in question. The evidence was sufficient to support findings by the jury, if such issues had been submitted, that the driver of said automobile was guilty of each of the acts plead by appellant, which are in substance that, at and immediately prior to the time of the collision between the bus of the appellant and the automobile that the driver of the automobile failed to have same under proper control; that the driver of said automobile was driving the same at a rate of speed in excess of that which an ordinarily prudent driver in the exercise of ordinary care would have driven the same under the same or similar circumstances; that immediately prior to the time of the collision involved herein the driver of the automobile drove his automobile upon the righthand side of the highway when travelling in the direction in which the bus was travelling; that in driving the said automobile in such manner as to permit same to skid or slide directly in front of appellant's bus.

Appellant requested in proper form issues submitting each of the foregoing acts on the part of the driver of the Pontiac automobile as being the sole proximate cause of the collision in question and the resulting injuries to the appellee, Gloria Howell, together with issues on negligence, and in addition thereto requested an issue inquiring if the acts of the driver of the automobile involved herein in permitting his automobile to go upon the right-hand side of the highway when travelling in the same direction in which the bus was driving concurring with the acts of said driver of said automobile in permitting the same to skid directly in front of the bus at and immediately prior to the time of the accident, was the sole proximate cause of the collision involved herein and of the injuries sustained by the appellee, Mrs. Gloria Howell.

The court submitted the defense of sole proximate cause by special issue No. 26, which is as follows: "From a preponderance of the evidence, do you find that the manner in which the Pontiac automobile was being operated at and immediately before the collision was not the sole proximate cause of the collision of said vehicles? Answer 'It was not the sole proximate cause' or 'It was the sole proximate cause.'" The appellant timely objected to this issue on the ground, among others, that it did not submit to the jury the defensive issues in the manner and form as plead by appellant, that it was entitled to have the various acts which the evidence in the cause disclosed or raised the issues were committed by the driver of the automobile which collided with the bus which were or were not the sole proximate cause of the accident in the manner and form as plead by the appellant, and because the issue so worded required the jury to find the existence of one or more state of facts which, under the undisputed evidence were actually committed by the driver of the automobile and which undisputed acts the jury should be permitted to find and ascertain were or were not the sole proximate cause of the accident such as the undisputed fact that the driver of the automobile permitted his automobile to go upon the wrong side of the highway and that the driver of the automobile permitted his automobile to skid to the front end of the bus upon said driver's wrong side of the highway, and in lieu of special issue No. 26 it prayed that the court submit its special requested issues, and each and all of same, which are in substance set out above; that such issue restricted the jury to the consideration of some one act having been

committed by the driver of the automobile as constituting the sole proximate cause of the collision when the jury might find and believe that one or more acts committed by the driver of the Pontiac automobile, concurring together, was the sole proximate cause of the collision. Appellant contends that the court should have submitted its affirmative defenses in the manner and form as plead by appellant and should not have submitted such defenses in one general issue over the timely objection of appellant.

In addition to the foregoing special defenses, the appellant plead that the collision in question was the result of an unavoidable accident and requested the court to submit an issue to the jury inquiring whether such collision was the result of an unavoidable accident. Such issue was submitted by the court with the resulting answer as set out above.

■ The appellees counter with a proposition that since appellant plead the defenses of sole causation and unavoidable accident, without pleading separate and distinct facts raising the two defenses, and since the same evidence that raised the issue of sole causation also raised the issue of unavoidable accident that the appellant was entitled to the submission of only one of the defenses, and since the court properly submitted the issue of unavoidable accident the appellant can not complain of the court's manner of the submission of the issue of sole causation. In connection with the issue submitting the question of unavoidable accident, the court gave the following as a definition of unavoidable accident; "You are instructed that the term unavoidable accident, as used herein, means an accident which occurred without negligence on the part of either the bus driver or the plaintiff." Under the definition of unavoidable accident, as given in the charge of the court, such issue obviously includes each and all of the matters plead as being the sole proximate cause of the collision in question. Having submitted an issue which fairly included each of the defensive matters plead, the trial court was not called upon to again submit such issues under a series of special issues under the theory that they, or either of them constituted the sole proximate cause. Dallas Railway & Terminal Co. v. Goss, Tex.Civ.App., 144 S.W.2d 591; Brandon v. Schroeder, Tex.Civ.App., 149 S.W.2d 140. Furthermore, the issue of sole proximate cause as given by the court is very similar to the issue on sole proximate cause submitted in the case of Northeast Texas Motor Lines v. Hodges, 138 Tex. 280, 158 S.W.2d 487, wherein the Supreme Court held that the issue was not subject to the objections here urged against special issue No. 26. For the foregoing reasons appellant's first nine points are overruled.

■ By points Nos. 10 and 11, appellant complains of the action of the trial court in overruling its objections and exceptions to special issue No. 24 as given in the court's charge to the jury, such exceptions and objections being in substance that such issue as framed does not require the jury to find and ascertain the damage sustained by the appellee in this cause proximately caused by the negligence of the appellant, and that the jury is permitted to find and assess damages irrespective of any finding of negligence against the appellant. Since the evidence raises the issue that the present condition of the injury of the appellee is attributable to the miscarriage which she sustained in August, 1944, rather than the injury sustained by her in the accident in February, 1944, and that such issue should confine the jury in assessing damages to damage, if any, proximately caused by the negligence, if any, of the appellant.

Special issue No. 24, submitting the issue of damages, was as follows:

"What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Plaintiff, Gloria Howell, for such injuries, if any, as you may find from a preponderance of the evidence, she has sustained, and will in all reasonable probability suffer in the future, as a direct and proximate result of the collision of the bus of Airline Motor Coaches, Inc. with the automobile on February 8, 1944?

"You will answer this question by stating the amount, if any, in dollars and cents.

"Answer: $20,000.00.

"In answering the foregoing Special Issue, you will take into consideration the following elements of damage, and none other:

"(a) Such mental and physical pain and anguish, if any, as you may find from a preponderance of the evidence, she has sustained from the time of her injuries on February 8, 1944, to the present time, as a direct and proximate result of the collision of the bus with the car driven by Robert Hoglan, on the occasion in question.

"(b) Such mental and physical pain and anguish, if any, as you may find from a preponderance of the evidence, she will in all reasonable probability suffer in the future beyond the date of this trial, as a direct and proximate result of the collision of the bus with the car driven by Robert Hoglan, on the occasion in question.

"(c) The reasonable present cash value of such pecuniary loss, if any, as you may find from a preponderance of the evidence Gloria Howell has sustained from the time of her injuries on February 8th, 1944, up to the present time, as a direct and proximate result of the collision of the bus with the car driven by. Robert Hoglan, on the occasion in question.

"(d) The reasonable cash value of such pecuniary loss, if any, as you may find from a preponderance of the evidence, she will in all reasonable probability sustain in the future beyond the date of this trial, because of her diminished capacity to work and earn money, as a direct and proximate result of the collision of the bus with the car driven by Robert Hoglan, on the occasion in question."

As shown by the foregoing issue, the jury was expressly limited in the main part of the issue, and in each element of damages, to injuries resulting from the collision of the bus and the automobile, made the basis of this suit. Under this charge, the jury could not have allowed damages for anything not proximately caused by the collision in question. As to the miscarriage suffered by appellee, Mrs. Gloria Howell, in August, 1944, the appellees offered medical testimony to the effect that the injury sustained by her in February, 1944, in the collision in question probably had some connection with said miscarriage. Therefore, we are of the opinion that it would have been improper for the trial court to exclude from the consideration of the jury the question of such miscarriage. Be that as it may, we can not agree with appellant that the charge as given was subject to the objections and exceptions made. These points are overruled. Airline Motor Coaches v. Fields, Tex.Civ.App., 159 S.W.2d 187; A. B. C. Storage Co. v. Herron, Tex.Civ. App., 138 S.W.2d 211; Scott v. Gardner, Tex.Civ.App., 159 S.W.2d 121; Grocers Supply Co. v. Stuckey, Tex.Civ.App., 152 S.W.2d 911.

By point No. 12, the appellant complains of the action of the trial court in admitting in evidence over the objections of the appellant portions of a written statement of the witness Don Bennett, which was given by him to a deputy sheriff of Harris County, Texas, on February 9, 1944, at the time such officer was investigating the accident involved herein. Don Bennett was the driver of appellant's bus which was involved in the collision made the basis of this suit. He made a statement relative to the circumstances surrounding the collision to the deputy sheriff of Harris County soon thereafter. In the trial of the case he testified to certain facts which were apparently in conflict with certain statements contained in the written statement made to the deputy sheriff. The trial court permitted appellees to offer portions of said written statement as being contradictory to certain statements made by the witness in the trial of the case. The appellant objected to its introduction, based on the proposition that such statement was made in compliance with Article 6687b of Vernon's Annotated Civil Statutes, which requires certain reports to be made to the Department of Public Safety of all accidents resulting in death, injury or apparent property damage of $50 or more, where one or more motor vehicles are involved, and providing that such report shall be without prejudice to the individual so reporting, and shall be for the confidential use of the Department except in

certain cases, and further providing that no such reports shall be used as evidence in any trial, civil or criminal, arising out of such accident. We can not agree with appellant that this statement made by the witness Don Bennett to a deputy sheriff of Harris County is such a statement as is required under the Article above referred to and therefore is not subject to the objection made. Furthermore, after the trial court had overruled appellant's objections to the admission of portions of said written statement and later on in the trial, the appellant offered the entire statement and in so doing rendered harmless or waived any error that might have been committed by the court in admitting portions of such written statement. Dohoney v. Womack, 1 Tex.Civ.App. 354, 19 S.W. 883.

By points Nos. 13 to 19, inclusive, appellant complains of the action of the trial court in refusing to grant a new trial based on arguments made to the jury by the attorneys representing appellees. The several excerpts from the arguments of appellees' attorney, made the basis of these points, are not here by way of bills of exception. There was no objection made to the arguments at the time such arguments were made, nor did the appellant move for a mistrial or in any manner suggest to the trial court that such arguments were considered objectionable, but raised the matter for the first time in their motion for a new trial by setting out in said motion the several excerpts of three different arguments and by making proof on the hearing of said motion that such arguments were made. Appellant made no proof on the hearing of said motion that such arguments were not supported by the evidence, nor that such arguments were not provoked by or invited by any argument by the attorneys representing appellant. To our mind, it is doubtful, when the complaint of argument is made in this manner, that it presents such error as should be sustained or considered by this court. Many cases hold that where a bill of exception shows no more than the fact that an argument was made without showing that it was not supported by the evidence, nor in reply to nor justified by the argument made by the opposing party, that it presents no reversible error for consideration. Therefore, it seems that when a party relies on the action taken on the motion for a new trial for a predicate for their points and assignments of error to an argument they should, in some manner, show that the argument complained of was in fact not justified by the evidence and was not justified by any argument of the opposing counsel. However we will refrain from disposing of these points on that ground.

It would require several pages to set out all the arguments complained of, most of which were undoubtedly justified and presents no error, while other portions we feel would require a reversal of this case but for the fact no objections were made thereto and no request for a mistrial, or any other complaint made to the trial court until the motion for a new trial was filed herein. The view we take of the law as applicable to a situation of this kind makes it unnecessary for us to unduly extend this opinion by setting out the arguments complained of.

■ We are of the opinion that appellant should have made objection to the alleged improper argument at the time it was made, at least before the retirement of the jury or, as stated by the court in the case of Baker Hotel of Dallas v. Rogers, Tex.Civ.App., 157 S.W.2d 940, 944, "Or, if appellant deemed the argument so prejudicial that as neither an explanation nor withdrawal by counsel nor an instruction by the court would have rendered the argument harmless, request should have been made to withdraw the case from the jury and discharge the panel. We do not think a litigant should be permitted to lie in wait, take chances on a favorable verdict and, being disappointed, sally from ambush and, for the first time, complain of an improper argument in the motion for a new trial." To our minds, this is a fair and reasonable rule. Litigants should not be permitted to trifle away the time of the trial court at the expense of the State and apparently acquiesce in any

matters which he feels to be injurious to his client without calling for a ruling from the trial court to protect his rights, who in all probability on many occasions would stop the trial and utilize the time of the court for some useful purpose. We believe a party who sits silently by and registers no complaint with the trial court as to the manner the trial is being conducted should not, for the first time in the motion for a new trial, be heard to complain.

If this is not the rule then argument, where an instruction from the court or withdrawal thereof by the offending attorney would not cure the injurious effect thereof, is the one and only error that might be committed in the trial of a case that is not waived upon failure to object where the complaining party had full knowledge of the error and an opportunity to make timely objections. It seems to be the rule that where a party observes a jury subjected to improper influence (which to our minds is a more serious error than an objectionable argument) and sits idly by during the trial and takes his chances on a favorable verdict, cannot successfully complain of such misconduct for the first time in his motion for a new trial. Allala v. A. N. Tandy & Sons, Tex.Civ. App., 59 S.W.2d 205, affirmed Tex.Com. App., 92 S.W.2d 227; City of San Antonio v. McKenzie Construction Co., 136 Tex. 315, 150 S.W.2d 989. This rule is also applied where the question of defendant being covered by insurance is injected into the case. Harrison-Wright Co. v. Budd, Tex.Civ.App., 67 S.W.2d 670; Russell v. Adams, Tex.Civ.App., 18 S.W.2d 189. See also Culpepper v. Lloyds of America, Tex. Civ.App., 140 S.W.2d 330. There being no objections nor motion for mistrial made before the retirement of the jury or the returning of the verdict, because of the alleged improper arguments, the several points complaining of such arguments are overruled. In support of our views herein expressed, see: Baker Hotel of Dallas, v. Rogers, supra; Liberty Mutual Ins. Co. v. Nelson, Tex.Civ.App., 174 S.W.2d 103; Shaw v. Porter, Tex.Civ.App., 190 S.W. 2d 396; Adamson v. Burgle, Tex.Civ.App., 186 S.W.2d 388; Callahan v. Hester, Tex. Civ.App., 181 S.W.2d 294; Murchison v. Ballard, Tex.Civ.App., 178 S.W.2d 554; McGregor Milling & Grain Co. v. Waren, Tex.Civ.App., 175 S.W.2d 476.

By points Nos. 20, 21 and 22, appellant complains of the action of the trial court at the time of the hearing upon appellant's first amended motion for a new trial, and when the jurors in this action were testifying concerning the question of the misconduct of the jury herein during their deliberations in connection with the alleged misconduct of the jury in discussing and taking into consideration the fact that appellant was covered by insurance and that one-half or some percentage of any amount which might be awarded to appellees as damages would have to be paid by them to their attorneys, in refusing to permit the appellant to have the jurors, J. A. Walters, Jack Cockrell and H. G. Taylor, refresh their memories concerning such occurrences in the jury room from the contents of the respective affidavits made by the said jurors, which were attached to the said amended motion for a new trial, after each of said jurors had testified to a state of facts different from the facts reflected by said respective affidavits, and in refusing to permit appellant to offer such affidavits in evidence, and in refusing appellant the right to cross examine and ask leading and suggestive questions to such jurors, claiming surprise as to the testimony of said jurors on such hearing. Such affidavits are in the record as constituting a part of appellant's bill to the action of the court. They are in substance to the effect that while the jury was deliberating upon the verdict and before they had agreed upon the amount of damages which would be awarded to appellees, that there was a discussion in the jury room to the effect that the bus company carried insurance and that any amount that might be awarded to the appellees as damages would be paid by the insurance company and that in all probability the appellees would have to pay their attorneys as much as one-half of any amount they recovered as attorneys fees. At the hearing on the motion for a new trial such jurors testified that no such statements

were made in their hearing until after the jury had arrived at a verdict on all issues. There is nothing in the record to indicate that either of the jurors desired to refresh their memories from the affidavits made only a few days before such hearing. We are unable to perceive how any injury resulted to appellant by the refusal of the trial court to permit the introduction of such affidavits as they could only serve to impeach the testimony of such jurors, and in view of the further fact that other jurors testified that no such discussion was had in the jury room before the jury had reached a verdict, and the trial court found as shown by his order overruling appellant's motion for a new trial that no mention or discussion of insurance, attorneys fees, or expenses of Mrs. Gloria Howell was made by the jury in their deliberation prior to the time a verdict had been reached and agreed upon, and said allegations of misconduct are unsupported by the evidence. The record further revealing that the trial court had read the purported affidavits and was fully advised of their contents, we are of the opinion that no reversible error is presented.

Finding no reversible error in the record, the judgment of the trial court is affirmed.

## On Motion for Rehearing.

■ After careful consideration of appellant's motion for a rehearing we have reached the conclusion that we were in error in overruling appellant's point No. 17, which complained of the error of the trial court in refusing to grant the appellant a new trial in this cause because of the argument and statements made by one of the attorneys representing appellees in making the closing argument in the trial of the case, the point being in substance that the attorney was entirely out of the record in the cause and stated to the jury that Claude Thomas, the president of appellant company, and who had been present in the court room throughout the trial of the cause, had sought to tamper with one of the jurors, to-wit, Mr. Jack Cockrell, thereby attempting to intimidate and did intimidate the juror Jack Cockrell against

returning a verdict in favor of appellant, and thereby destroyed the free agency and independence and thought of said juror, and thereby directly coerced and sought to and did compel the said Cockrell to vote to return a verdict in this cause in favor of appellees, which was actually returned by the jury. We originally overruled this point for the reason that we believe the rule should be that a party should not for the first time be heard to complain of improper argument in its motion for new trial when no objections had been made thereto nor any motion for a mistrial to be entered. We are still of the opinion that such a rule is supported by sound reason. However, it is not in accord with the rule announced by the Supreme Court in such cases as Ramirez v. Acker, et al., 134 Tex. 647, 138 S.W.2d 1054, wherein the Supreme Court undertakes to set out the rules governing when an objection by the complaining party should or should not be made to improper argument before he would be entitled to a reversal of the cause. We are convinced that the argument here complained of was such that the harmful effects thereof could not have been cured by an instruction from the court (if in truth it is ever possible so to do). Therefore, under the apparently well established rule of the Supreme Court of this state the appellant was permitted to sit by without registering any complaint; take his chances on a favorable verdict and when disappointed raise the point for the first time in a motion for a new trial. The argument here complained of was as follows:

"But, this is a serious matter, Gentlemen, both to Airline Motor Coaches, Incorporated, and Gloria Howell, and, not to Claude Thomas—Claude Thomas is connected with Airline Motor Coaches just like J. W. Richards is Texas Long Leaf, he is the President of it. And they try to flaunt Claude here because he has kin folks on the Jury, and other people sitting around here; and, Gentlemen of the Jury, nobody on our side of the case has any kin folks to any juror who would spend the night with him and ride down here. If it has happened on the other side of the case, Gentlemen of the Jury, I have

confidence enough in the men on the Jury that it will not affect you—I don't approve of that, and I don't think you do. If it has happened, Gentlemen of the Jury, it is not Gloria Howell's fault, it is not her father's fault; it is not her mother's fault, and it is not my, or Fox Campbell's or Ed Smith's fault. And, I still believe, Gentlemen of the Jury, that the twelve men on this Jury—and I know every one of you, except the young man sitting over there—and I believe the twelve men sitting on this Jury will go into that Jury Room up there and treat Gloria Howell just like the bus company, even though, Gentlemen, you have a bus agent sitting here on the jury, a hired hand of Mr. Thomas, if you want to call it that—Airline Motor Coaches; we took him on there, too. He is working for him, and he is kin to me. But, Gentlemen of the Jury, if Claude Thomas, or any other person, I don't care where he came from or what he looks like, if he did get up to you that way, or try to—because I know he can't do it—if he did try to get up to you, if they do that, Gentlemen of the Jury, they would steal a nickle off a dead man's eye—and that's the truth too. I would like to talk to every man on this Jury after you come out of here and are turned loose, and I will talk to you, separate or together—and let me do it—and I will prove to you what I am saying if you let me do it. I am tired of this kind of stuff; I am getting enough of it, and if I can stop it, I am going to. I will talk to you personally and tell you about it after it is over."

The record in the case reveals that the juror Jack Cockrell was related to Mr. Claude Thomas, who was the president of the defendant company, and that the remarks made by said attorney were directed at the juror Cockrell. Under such state of facts, any effort on the part of said juror to make any contention favorable to appellant would have a tendency to place him in the light before his fellow jurors of having been "tampered" with or "got to" by the "kin folks" of said Thomas.

The trial court in its order overruling appellant's motion for a new trial found as a fact that the argument complained of was fully justified by the conduct of Mr. Wallace, the father-in-law of one of the jurors (Jack Cockrell), who had been carried to the home of said juror by a brother-in-law of C. D. Thomas and accompanied him to court.

The only justification for such argument and finding by the trial court arose in a rather unusual manner. Near the end of the evidence in the trial of this cause, one of the attorneys for appellees requested the trial court to retire the jury, whereupon Mr. J. R. Wallace was called to the witness stand and in the absence of the jury gave the following testimony:

"Q. What is your name, please sir? A. J. R. Wallace.

"Q. Where do you live, Mr. Wallace? A. Chester, Texas—in the neighborhood of Chester.

"Q. How long have you been in Livingston this week? A. This is the first time I have been here.

"Q. When did you come here? A. This morning.

"Q. How did you get down here? A. I came with Mr. Cockrell.

"Q. What Cockrell? A. Jack Cockrell.

"Q. He is on this Jury too, isn't he? A. I suppose he is.

"Q. You have a boy working for the Beaumont-Lufkin-Beaumont Motor Coaches, don't you? A. Working for who?

"Q. One of these bus companies up here? A. Yes sir.

"Q. What is his name? A. George Wallace.

"Q. How long has he been working for them? A. I can't remember.

"Q. I will ask you during the noon hour if you weren't off in a private conversation with Mr. John Dillon, and didn't I come up and ask you where you lived, and you said Chester? A. I said I still lived at Chester.

"Q. Were you talking to Mr. John Dillon in a private conversation? A. Any fellow down. * * *

"Q. Answer that question: were you talking to Mr. John Dillon in a private conversation? A. He was standing there.

"Q. Weren't you talking to him?—And, you know Mr. Quattlebaum standing outside, out there?

"(Mr. Quattlebaum was called inside the Court Room)

"Q. (continuing) You know that man, Mr. Wallace? A. Which man?

"Q. The man there: Robert Quattlebaum. Do you know him? A. I met him since I have been here today.

"Mr. Foreman: Thank you, Mr. Quattlebaum, you can stand outside now. (Whereupon, Mr. Quattlebaum retired from the Court Room).

"Q. (continuing) Now, just a few minutes ago, when we asked the Court for permission to examine this purported log, when we walked back in the office there, if you, after having talked to John Dillon, weren't in that office talking privately to Mr. Quattlebaum? A. Me and him was in there.

"Q. Just you two? A. Yes sir, I was.

"Q. How did you come down here? You said you brought Jack Cockrell? A. I come with him.

"Q. How did you come? A. We come in Jack Cockrell's sister's car.

"Q. Who else came? A. Nobody but us.

"Q. Where did you stay last night? A. At Mr. Jack Cockrell's.

"Q. Did you talk about this case? A. No sir.

"Q. Who did you marry? A. Miss Alice Richardson.

"Q. Where was she from? A. Raised over there in the neighborhood of Chester.

"Q. You didn't know Mr. Quattlebaum works for Airline Motor Coaches? A. I didn't know it until I met him out there this morning.

"Mr. Foreman: I don't know what to do about a situation like this: this man staying all night with a Juror; lives at Chester and rides down here with him from Corrigan, and by his own admission down stairs a few minutes ago talking to John Dillon and then a few minutes ago talking to a representative of this bus company, Robert Quattlebaum, in the courthouse.

"Mr. Lewright: Judge, if there is anything improper about it, I don't know anything about it. If they can develop they talked about the case—But it is utterly ridiculous to indict a man because he was speaking with a man out here and * * *

"The Court: We will go ahead with the case.

"Q. (Mr. Campbell) Didn't you say your wife was who? A. Richardson.

"(Questions by Mr. Foreman)

"Q. What is your boy's name that works for the bus company? A. I told you a while ago his name was George Wallace.

"Q. Who does he work for? A. Airline Bus Company.

"Q. Working for C. D. Thomas of Airline Motor Coaches? A. I know it is Airline Bus Company.

"Q. Who else came down here with you and the juror, Jack Cockrell, except you two this morning? A. Do how?

"Q. Who else came down here with you and Jack Cockrell except you two this morning? A. I don't know her name, but Jack Cockrell's baby sister—Miss Stacey I think her name is.

"Q. Who got you to come down here? A. Nobody.

"Q. What did you come down here for? A. To meet the boys here.

"Q. Who did you come to meet? A. My old acquaintances.

"Q. Who are some of them? A. There is one there: Mr. Feagin.

"Q. You have been to his office? A. No sir.

"Q. Have you been to his home? A. No sir.

"Q. Did you know he was in this case when you come down here? A. I didn't know this case was on until yesterday evening.

"Q. Who did you come to meet? A. I come here to meet you the same as anybody else.

"Q. You haven't met me, have you? A. I have been talking to you, and you didn't know me over there this morning.

"Q. I did know you. A. You didn't let on like you did.

"Q. But I knew you, and I have known you all my life, and I knew your boy worked for the bus company too. A. Yes sir.

"Q. How did you get from home to Corrigan? A. I come from Chester to Corrigan; my wife is in bad health, and we come over to my son's at Chester and stayed two nights.

"Q. How did you get from Chester to Corrigan? A. A man by the name of Henry Seaman took me and my wife.

"Q. C. D. Thomas married a Seaman? A. Yes sir, but Mr. Seaman didn't know anything about this and I didn't either.

"Q. Was that her father you came with? A. Her oldest brother.

"Q. Did you mention the case? A. I didn't know anything about it, and I didn't.

"Q. You say your wife is sick? A. She is in ill health—able to walk around.

"Q. Who is with her now? A. Mrs. Cockrell.

"Q. Mrs. Cockrell is with her now? A. Yes sir.

"Q. Are you kin to Jack Cockrell? A. He married my daughter.

"Mr. Foreman: You have a relative of Claude Thomas bringing him from home to Corrigan, and him staying and sleeping with a juror, Mr. Cockrell, who married the man's daughter.

"A. I have a right to go to see my daughter.

"The Court: I don't see anything in this at the present time—the status of it. You just be careful, Mr. Wallace.

"A. Yes sir."

■ We believe that the argument complained of finds no support in the evidence, especially that part of the evidence that went to the jury, and that in addition to the harmful effects of placing the juror in an embarrassing position and thereby limiting his freedom of action that it had the effect of creating a prejudice in the minds of each and all of the jurors against the appellant and would likely lead to the jury making an effort to condemn such unworthy conduct by assessing damages at more than they otherwise might have, and could very well have been considered by the jury as a confession on the part of the appellant that its agents had been guilty of negligence and that appellees had suffered serious damages as the result thereof for the reason that otherwise they would not have, in the usual course of human conduct, gone to such an extent in an effort to defeat appellees' cause of action. Such argument being entirely out of the record and the natural result thereof being harmful to the appellant, and as we feel that any instruction from the court would have been wholly inadequate to remove the harmful effect thereof, we have concluded that the argument was such as to require a reversal of this cause. 41 Tex.Jur. 774, and cases there cited; Turpin v. Commonwealth, 140 Ky. 294, 130 S.W. 1086, 30 L.R.A., N.S., 794, 140 Am. St.Rep. 378; City of Austin v. Howard, Tex.Civ.App., 158 S.W.2d 556; Airline Motor Coaches, Inc., v. Bennett et al., Tex. Sup., 187 S.W.2d 982.

■ Appellant assails our conclusion in this case to the effect that its affirmative defensive issues were adequately submitted by the trial court wherein we held in substance that the issue submitting the issue of unavoidable accident was sufficient to and did submit each and all of the issues of fact relied on by appellant as constituting the sole proximate cause of the collision in question, and cites the opinion of the Supreme Court in the case of Schuhmacher & Co. v. Holcomb, 142 Tex. 332, 177 S.W.2d 951, wherein the Supreme Court took occasion to say they were not in agreement with the principles announced by the Court of Civil Appeals in that case, which in substance is the identical principle announced by us in our original opinion. It was not necessary for the court to pass upon the point in Schuhmacher v. Holcomb, and we are constrained to believe that had it been they would have given the matter more serious consideration. The reason given by the court for

its disapproval of the principle announced by the Court of Civil Appeals in the Schuhmacher case do not appear in this record. There can be no doubt that the trial court should have given a charge in that case on the issue of sole proximate cause in addition to his charge of unavoidable accident for the reason that the third party whose acts were relied on as being the sole proximate cause of the injuries to one of the parties was also a party plaintiff to the suit, and, therefore the defendant was entitled to the issue of unavoidable accident as applied to one of the plaintiffs, and proper issues of the sole proximate cause as applied to the other plaintiff. In the present case, had either or all of the acts plead as being the sole proximate cause been found favorable to appellant it would necessarily have been an unavoidable accident as between appellant and appellee as then it would have happened without being caused by the negligence of either party. We are still of the opinion that where a defendant in a suit, where the facts are as here presented, plead the defense of unavoidable accident and at the same time pleads the acts of a third party as being the sole proximate cause of the accident, and the only evidence in the case in support of a finding that it was an unavoidable accident is the identical evidence which raises the issues of the acts of a third person as being the sole proximate cause, and requests the court to submit the defense of unavoidable accident, that the court is justified in granting such request and in refusing to again submit the same facts as a defense under the theory that they constituted the sole proximate cause.

Appellant also complains of our remarks concerning the necessity for the motion for a new trial to show in some manner that the argument complained of was not justified by the evidence nor in response to arguments made by the opposing counsel. Such statement was not necessary to the conclusion reached and is hereby withdrawn.

Having concluded that we were in error in overruling appellant's point No. 17, appellant's motion for rehearing is granted and our judgment affirming this cause is set aside and the same is reversed and remanded for a new trial.